ORDERED.

Dated: September 08, 2020

*Jerry A. Funk*
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                              Case No. 3:19-2685-JAF

JASON JAMES SEPIELLI                                Chapter 7
and JONI LYNNE SEPIELLI,
    Debtors.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    This case came before the Court upon the Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) Based on Abuse Arising Under 11 U.S.C. § 707(b)(3) (the "Motion to Dismiss") (Doc. 20). The Court conducted a trial on the Motion to Dismiss on February 13, 2020. The parties entered into a Joint Stipulation of Facts as to the Motion to Dismiss. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.[1]

---

[1] The Honorable Cynthia C. Jackson presided over the trial of this matter but is unable to issue a decision at this time. Rule 63 of the Federal Rules of Civil Procedure, made applicable through Fed.R.Bankr.P. 9028, provides that "if a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties." The undersigned has listened to the recording of the trial and is otherwise familiar with the record of the case.

**Findings of Fact**

On July 17, 2019, the Debtors filed a voluntary Chapter 7 bankruptcy petition (Doc. 1). Mr. Sepieilli works in the field of IT project management and program management. Mr. Sepeilli earned a bachelor's degree in business in 2012 and an MBA in 2017. Although Mr. Sepielli's degrees are in business, he primarily works in software development.

Mr. Sepielli's industry is characterized by frequent job changes and high employment mobility. Between May of 2015 and June of 2019, Mr. Sepielli was employed by three different companies. In June of 2019, Mr. Sepielli began working for Tax Defense Network, where he remains employed.

From December of 2017 until June of 2018, Mr. Sepielli was unemployed for medical reasons. The Debtors regard this period of unemployment as when their financial problems began. Mr. Sepielli testified that the Debtors' approximate $83,805.00 in non-student loan unsecured debt resulted from the Debtors living on their credit cards during this six-month period.[2] Mr. Sepielli testified that the Debtors did not use their credit cards to purchase luxury items or for vacations. The Debtors were current on their credit card payments until they filed their bankruptcy petition.

Mr. Sepielli earns a gross monthly salary of $10,000.00. As of the trial date, Mrs. Sepielli worked at a non-profit organization where she earned $12.00 per hour and worked approximately 10 hours per week, earning a take home pay of approximately $500.00 per month. As of the date of the hearing, the Debtors' monthly disposable income was $1,395.71.

---

[2] However, the Debtors testified at their deposition that the $13,225.00 unsecured debt listed on their schedules owed to Independent Savings Plan Company was for the purchase of solar panels in October of 2017. (Trustee's Ex. 8 at pp. 25-26). The Debtors' 2017 tax return indicates that they purchased the solar panels for $22,485.00. (Trustee's Ex. 13). Between October of 2017 and May of 2019, the Debtors paid approximately $9,000.00 to Independent Savings Plan Company.

As of the petition date, the Debtors had approximately $259,485.00 in unsecured debt of which approximately $175,680.00 is student loan debt. Of the student loan debt, approximately $140,000.00 is attributable to Mr. Sepielli, and the remainder is attributable to Mrs. Sepielli.

If the Debtors' bankruptcy case is converted to a Chapter 13, the Debtors would be required to pay their unsecured creditors, including their student loan creditors, pro rata over the 60-month repayment period. A monthly payment of $1,395.71 would result in an approximate dividend of thirty percent to their non-student loan unsecured creditors. The pro rata share of their payment that would be paid to their student loan creditors would only approximately offset the interest accruing on their student loans. At the conclusion of their plan, the Debtors would be discharged of non-student loan debt but would still owe approximately the full current amount of their student loans, which constitute approximately two thirds of their pre-petition indebtedness.

Mrs. Sepielli expected to graduate from college on April 5, 2020 with a bachelor's degree in environmental policy management. She intended to work less during the summer because the cost of child-care for the Debtors' children would exceed whatever she would have earned. Mrs. Sepielli hopes to find employment in her field. She has some contacts in city government but did not have a job offer as of the date of the hearing.

### Conclusions of Law

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). "In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA'), Congress made sweeping changes to the Bankruptcy Code to address perceived abuses of the bankruptcy system and to ensure that debtors with the ability to repay their debts do so." In re Norwood–Hill, 403 B.R. 905, 907-908 (Bankr. M.D. Fla. 2009). "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts

3

in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). However, it is well-established that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. In re Jacob, 447 B.R. 535, 538 (Bankr. N.D. Ohio 2010) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)); See also In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009) ("There is now no presumption favoring Chapter 7 relief, but an emphasis on repaying creditors as much as possible."). Discharge "is, instead, a legislatively created benefit that Congress may withhold at its discretion." In re Jacob, 447 B.R. at 538.

"To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed." Id. When Chapter 7 relief is sought, the conditions mandating dismissal are set forth in § 707 of the Bankruptcy Code. Section 707(b)(1) provides that a court may dismiss a Chapter 7 case filed by an individual whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. The Trustee seeks to have the case dismissed pursuant to § 707(b)(3)(B) of the Bankruptcy Code which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider—
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3)(B). The parties assert that the "primary issue in this case is how the Debtors' student loan[s] should be considered for purposes of calculating the disposable income under the totality of the circumstances test." The Debtors contend that because they would still owe approximately the full current amount of their student loans upon a discharge in Chapter 13, this Chapter 7 filing is not an abuse under the § 707(b)(3)(B) totality of the circumstances test.

The Trustee argues that because the Debtors can pay a dividend to their unsecured creditors, they are not eligible for relief under Chapter 7.

Initially, the Court notes that the determination of whether a debtor's student loan should be deducted for purposes of calculating disposable income arises under a § 707(b)(2) analysis, not a § 707(b)(3) analysis.[3] That is, if a student loan payment constitutes a "special circumstance," it is an allowable expense in performing a means test calculation under § 707(b)(2). The motion before the Court is not a motion based on a presumption of abuse under § 707(b)(2).

The Court turns to § 707(b)(3). A debtor's ability to pay, as measured by what he could pay in a hypothetical Chapter 13 case, is the primary but not conclusive factor a court must consider in a § 707(b)(3) analysis. In re Norwood-Hill, 403 B.R. at 912. That is, the ability to pay, standing alone, is insufficient to warrant dismissal. Id. (citing In re Degross, 272 B.R. 309, 313 (Bankr. M.D. Fla. 2001)). The better reasoned analysis is one which considers a debtor's ability to pay along with other circumstances. Degross, 272 B.R. at 313. If a debtor has the ability to pay something, the Court looks to the following factors, to the extent they are helpful, to determine whether they militate against or in favor of dismissal: 1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; 2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same; 3) the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether

---

[3] "Section 707(b)(2), [the Means Test], provides a method to determine whether a debtor's case is presumptively abusive for purposes of dismissal under § 707(b)(1). Generally, the section provides that the Court shall presume that abuse exists if the debtor's current monthly income, reduced by the expenses or payments under subsection (b)(2), is greater than certain threshold amounts set forth in the section." In re Rivers, 466 B.R. 558, 561 (Bankr. M.D. 2012). "[T]he presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; 7) whether the debtor made any payments toward the debts or attempted to negotiate with creditors; and 8) the accuracy of the debtor's schedules and statement of current income and expenses. Norwood-Hill, 403 B.R. at 912.

The Court finds that for purposes of the Motion to Dismiss, the Debtors have disposable income of at least $1,395.71 per month. Even if Mrs. Sepielli has not obtained a full-time job in her field, the summer is over and she is capable of earning at least what she was earning at the time of the hearing. Given their approximate $1,400.00 monthly disposable income, the Debtors are able to pay approximately thirty percent to their unsecured creditors in a hypothetical Chapter 13 plan.

The Court turns to the factors it has previously set forth to determine whether granting the Debtors a discharge in this case would be an abuse. While Mr. Sepielli was unemployed for approximately six months, his current gross income is $120,000.00 annually. The Debtors are not elderly, and there is no evidence before the Court that they or their dependents suffer from any illness, disability, or health problems. Assuming for purposes of the Motion to Dismiss that the Debtors have monthly disposable income of approximately $1,400.00, they can pay an approximate thirty percent dividend to their unsecured creditors during a hypothetical sixty-month plan. However, as the United States Trustee pointed out, at some point, Mrs. Sepielli will obtain a job in her chosen career field working more than ten hours a week. While it is uncertain what she will earn, the Court believes her disposable income will exceed the $500.00 per month

it was at the time of the hearing, resulting in a greater dividend to the Debtors' unsecured creditors.

The Court is sympathetic to the Debtors' plight with respect to their large student loan debt and recognizes that, if they convert to Chapter 13, they will emerge from Chapter 13 owing as much on their student loans as they presently owe. That having been said, the Court does not find that the Debtors' student loan debt constitutes a circumstance which militates against dismissal. The Court finds that the Debtors will receive a benefit from a Chapter 13 case because they will discharge approximately $59,000.00 in unsecured non-student loan debt. Upon the completion of their plan payments and discharge, the Debtors will be able to focus solely on their student loan debts. The Court finds that granting the Debtors relief under Chapter 7 would be an abuse. Accordingly, the Court will grant the Motion to Dismiss.

## Conclusion

The Debtors can pay an approximate thirty percent dividend to their non-student loan unsecured creditors and discharge their remaining approximate $59,000.00 non-student loan unsecured debt in a hypothetical Chapter 13 plan. No other factors, including the fact that the debtors will emerge from Chapter 13 owing as much on their student loans as they presently owe, militate against dismissal. Granting the Debtors relief under Chapter 7 would be an abuse. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Clerk's Office to Serve